

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

In Re SAIC, Inc. SECURITIES
LITIGATION

12 Civ. 1353 (DAB)
<u>MEMORANDUM AND ORDER</u>

---------------------------------X
DEBORAH A. BATTS, United States District Judge.

Plaintiffs Indiana Public Retirement System, Indiana State
Teachers' Retirement Fund, and Indiana Public Employees'
Retirement Fund, on behalf of themselves and other similarly
situated investors, ("Plaintiffs") commenced a putative class
action pursuant to Section 10(b), 15 U.S.C. § 78j(b), and Section
20(a), 15 U.S.C. § 78(t), of the Securities Exchange Act of 1934
(the "Exchange Act").  On September 30, 2013, having considered
support and opposition papers related to Defendant SAIC's ("SAIC"
or "Defendant")[1] and Individual Defendants'[2] Motions to Dismiss,
the Court issued an Order ("September 2013 Order") concluding
that the Amended Class Action Complaint ("Complaint") largely
failed to meet the heightened pleading standard of Rule 9(b) and
the PSLRA. <u>See</u> <u>In re SAIC, Inc.</u>, 12 Civ. 1353, 2013 U.S. Dist.
LEXIS 142606, at * 4 (S.D.N.Y. Sept. 30, 2013).  The Court,
therefore, granted in part and denied in part the Motions to

---

[1] Following a spin-off transaction, SAIC, Inc. changed its name to Leido
Holdings, Inc. (Def.'s Mem. Law at 1.)  For the purposes of this action and
the sake of consistency, however, the Court will to refer to it as SAIC.

[2] Individual Defendants included Kenneth C. Dahlberg, Walt Havenstein, Mark W.
Sopp, Deborah H. Alderson, and Gerard Denault.

Dismiss, dismissing all of Plaintiffs' Section 10(b) claims with the exception of those Generally Accepted Accounting Principles ("GAAP") claims related to SAIC's March 2011 Form 10-K statements.[3] Id.  The Court also dismissed the Section 20(a) claims against Individual Defendants. Id.

On October 16, Defendant filed a Motion to Reconsider pursuant to Local Rule 6.3, which is the basis of the instant Memorandum and Order. (ECF No. 104, 105.)[4]  For the reasons set forth herein, Defendant's Motion to Reconsider is GRANTED.  On reconsideration, the Motion to Dismiss is GRANTED and the Complaint is DISMISSED with prejudice.

I. BACKGROUND

The instant action arises from a scheme, devised by former SAIC employees and others, in which the City of New York, then a SAIC client, was fraudulently overbilled for the development of a web-based employee time-keeping system called "CityTime."  The September 2013 Order describes the factual basis for the action in meticulous detail, and it will not be repeated here.

---

[3] In the September 2013 Order, the Court granted Plaintiffs leave to amend the Section 10(b) claims based on the Company's March 2011 GAAP and internal control statements, as well as the corresponding Section 20(a) claim against all Individual Defendants except Denault. See In re SAIC, Inc., 2013 U.S. Dist. LEXIS 142606, at * 50-51.  Plaintiffs failed to do so and, pursuant to the September 2013, those claims are DISMISSED with prejudice.

[4] Defendant SAIC also filed an Answer to the Complaint on December 2, 2013. (ECF No. 112.)

## II. DISCUSSION

### A. Legal Standard for a Motion to Reconsider

The standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked —matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSC Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Range Road Music, Inc. v. Music Sales Corp., 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000)(holding that a motion for reconsideration "is appropriate only where the movant demonstrates that the Court has overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court."). Reconsideration is also appropriate when there has been a change in controlling law. King County, WA v. IKB Deutche Industriebank AG, 863 F. Supp. 2d 317, 319 (S.D.N.Y. 2012). In addition, "[t]he standards governing a motion to alter or amend judgment pursuant to Rule 59(e) and motions for reconsideration or reargument pursuant to Local Rule 6.3 are the same." Word v. Croce, No. 00 Civ. 6496, 2001 U.S. Dist. LEXIS 9071, at * 5 (S.D.N.Y. July 5, 2001).

A motion for reconsideration is not one in which a party may reargue "those issues already considered when a party does not like the way the original motion was resolved." In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996).  Thus Local Rule 6.3 should be "narrowly construed and strictly applied" to avoid repetitive arguments already submitted to the Court. National Congress for Puerto Rican Rights v. City of New York, 191 F.R.D. 52, 53 (S.D.N.Y. 1999)(citation omitted).  Nor should the parties simply "address facts, issues or arguments not previously presented to the Court." U.S. Titan v. Guangzhou Zhen Hua Shipping Co., Ltd., 182 F.R.D. 97, 100 (S.D.N.Y. 1998)(citations omitted).  Reconsideration may only be granted where the moving party can demonstrate that the court overlooked decisions or information that might "reasonably be expected to alter the conclusion reached by the court," Lesch v. United States, 372 F. App'x 182, 183 (2d Cir. 2010)(quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)), or that reconsideration is necessary "to correct a clear error or prevent manifest injustice." Montalvo v. United States, No. 11 Civ. 6864, 2013 U.S. Dist. LEXIS 82082, at * 3 (S.D.N.Y. June 11, 2013)(quoting Banco de Seguros Del Estado v. Mutual Marine Offices, Inc., 230 F. Supp. 2d 427, 428 (S.D.N.Y. 2002)).

B. The September 2013 Order

In its September 30, 2013 Order, the Court denied Defendant's Motion to Dismiss the Complaint pursuant to Rule 12(b)(6), Rule 9(b), and the PSLRA insofar as it related to Plaintiffs' Section 10(b) claim based on SAIC's March 2011 10-K Financial Statement.  The Court concluded that Plaintiffs "ma[de] out a plausible claim that Defendants violated [Statement of Financial Accounting Standards No. 5 ("SFAS No. 5")] in filing the March 2011 10-K Form," In re SAIC, Inc., 2013 U.S. Dist. LEXIS 142606, at * 30, and that the "facts alleged, and resolved according to the reasoning in the loss contingency analysis" were sufficient to state a claim on the Item 303 allegation for the same period. Id. at * 33.  The Court otherwise dismissed all of Plaintiffs' claims, granting Plaintiffs leave to amend the Section 10(b) claims based on the Company's March 2011 GAAP and internal control statements, as well as the corresponding Section 20(a) claim against all Individual Defendants except Defendant Denault. Id. at * 50


C. Arguments on Reconsideration of the September 2013 Order

In its brief in support of the instant motion, Defendant argues that the Court used a less stringent legal standard than what is required to analyze the remaining claims.  Defendant suggests that the Court conflated the legal standard, using the

"reasonably possible" standard for the first part of the test, which called for a higher "probable" standard. (Def.'s Mem. Law at 2.)  Defendant further asserts that two organizations, the American Bar Association ("ABA") and the Public Company Accounting Oversight Board ("PCAOB"), support its position that SFAS No. 5 contemplates "a high[er] threshold for disclosure" than the one used by the Court. (Def.'s Mem Law at 4.)  Having revisited the Complaint and the factual allegations asserted therein, the Court agrees.

Defendant asserts correctly that SFAS No. 5 mandates disclosure "when a company considers it 'probable'-not 'reasonably possible'-that the claim will be asserted against it . . . ." (Def.'s Mem Law at 2)(emphasis in original.)  SFAS No. 5 states that "disclosure is not required . . . unless it is considered probable that a claim will be asserted and <u>there is a</u> <u>reasonable possibility that the outcome will be unfavorable</u>." (SFAS No. 5 ¶ 10)(emphasis added.)  The Court's mention of a reasonably possible "loss contingency" refers to an unfavorable outcome, which only needs to be reasonably possible, not the potential assertion of a claim, which must be probable. <u>In re</u> <u>SAIC, Inc.</u>, 2013 U.S. Dist. LEXIS 142606, * 30; (<u>see also</u>, Def.'s Mem. Law at 2.)  However, in concluding that "by its March 2011 filing, the Company knew or should have known that a loss contingency was reasonably possible and required disclosure," the

Court was in error. In re SAIC, Inc., 2013 U.S. Dist. LEXIS
142606, * 30.  The Court made a factual assumption that led it to
apply a lower standard than what the law requires.

Defendant further supports its argument by referencing ABA
and PCAOB guidelines, which are "standards for lawyers and
auditors under SFAS 5 for the disclosure of unasserted claims."
(Def.'s Mem. Law at 4.)  The Court, however, finds that
Defendant's reference to these guidelines is inappropriate on
reconsideration.  Defendant makes no claim that the guidelines
information was made available to the Court; considering it now
would undermine the precept that, on a motion to reconsider,
parties "may not advance new facts, issues, or arguments not
previously presented to the court." Walsh v. McGee, 918 F. Supp.
107, 110 (S.D.N.Y. 1996)(internal citation omitted); (See also,
Pl.'s Mem. Law at 7)("SAIC did not invoke these guidelines
earlier and, consequently, it cannot do so now.")(citation
omitted.)  The Court, therefore, cannot consider this newly
asserted information.  The ABA and PCAOB guidelines are of no
consequence here, however, because the Court misapprehended the
facts set forth in the Complaint and supporting documents.

The remaining claims hinge on three allegations: (1) the
U.S. Attorney's Office, in December 2010, indicated that it would
file criminal complaints against four non-SAIC employees related
to the CityTime project; (2) SAIC, also in December 2010, placed

7

Defendant Denault on administrative leave and commenced an internal investigation[5] into the CityTime project; and (3) the U.S. Attorney's Office, in February 2011, indicted five non-SAIC employees and obtained a guilty plea from one non-SAIC employee related to the CityTime project. (Compl. ¶¶ 4, 5, 21, 68, 112, 114, 115)(Def.'s Mem. Law at 5.)   While Plaintiffs allege, and Defendant agrees, that an internal investigation was underway at the time of the March 2011 filing, no assertions were put forward to the effect that SAIC had uncovered any employee wrongdoing by that point, much less facts that would prompt disclosure. (Compl. ¶ 114.)   Nor does the Complaint suggest Defendant was made aware that it was a focus of the criminal investigation prior to the March 2011 filing.   The Government's commencing and prosecuting criminal cases against actors who were not employed by SAIC, and the company's launching of an internal investigation, without more, is not enough to make out a securities fraud claim.

Defendant argues that the aforementioned occurrences did not prompt it to make disclosures in the March 2011 10-K filing because GAAP, in SAIC's professional judgment, did not dictate disclosure. (See, e.g., Def.'s Reply Mem. Law at 5.)   There is merit to this argument.   "The provisions of GAAP are subject to interpretation," and the principles "'tolerate a range of

_____

[5] At the conclusion of the investigation, Defendant Denault was terminated. (Compl. ¶ 114)

8

reasonable treatments, leaving the choice among alternatives to management.'" In re Fannie Mae 2008 Sec. Litig., 742 F. Supp. 2d 382, 408 (S.D.N.Y. 2010)(citing Thor Power Tool Co. v. Comm'r of Internal Revenue, 439 U.S. 522, 544 (1979)). The allegations do not suggest that, by the time of the March 2011 filing, the information available left the company with the belief that a claim or assessment against it was probable. Therefore, the facts as stated in the Complaint do not undermine Defendant's professional judgment on this issue and, as a result, the Complaint falls short of the probability standard required to plead an omission for a 10(b) claim.

Plaintiffs contend that Defendant reasserts arguments presented on the underlying Motion and that, to the extent that new arguments are made, Defendant should have raised them earlier. As noted herein supra, however, the Court declines to consider the ABA and PCAOB arguments that Defendant puts forth. And while the Court sympathizes with Plaintiffs' concern regarding asserting the identical arguments, on reconsideration, the Court should correct its initial mistake rather than proceed as if it did not exist. See Capitol Records, LLC v. Vimeo, LLC, 09 Civ. 10101, 2013 U.S. Dist. LEXIS 181882, at * 8 (S.D.N.Y. Dec. 31, 2013)(quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)(Reconsideration

is proper if there is "the need to correct a clear error or prevent manifest injustice.")

Similarly, Plaintiffs' Item 303 claim must also fail.   Item 303 is a "[r]egulation [that] imposes a disclosure duty 'where a trend, demand, commitment, event or uncertainty is both (1) presently known to management and (2) reasonably likely to have material effects on the registrant's financial condition or results of operations.'" Panther Partners Inc. v. Ikanos Communs., Inc., 681 F.3d 114, 120 (2d Cir. 2012)(internal citation omitted).   At the motion to dismiss stage, Item 303's disclosure mandate "requires that a plaintiff plead, with specificity, facts establishing that the defendant had actual knowledge" of the purported trend, demand, commitment, event, or uncertainty. Blackmoss Invs. Inc. v. Aca Capital Holdings, Inc., No. 07 Civ. 10528, 2010 U.S. Dist. LEXIS 2899, * 24-25 (S.D.N.Y. Jan. 12, 2010); see also Steckman v. Hart Brewing., 143 F.3d 1293, 1297 (9th Cir. 1998)(Item 303 "mandates . . . knowledge of an adverse trend.")   Though "materiality is undoubtedly a flexible concept due to its fact-specific nature," Litwin v. Blackstone Group, L.P., 634 F.3d 706, 722 (2d Cir. 2011), the three events alleged to have occurred between December 2010 and March 2011 (i.e. the U.S. Attorney's Office filing criminal complaints, Defendant SAIC's placing Denault on administrative leave pending an internal investigation, and the U.S. Attorney's

filing of indictments) are not enough to establish that the
management (1) had knowledge that the company could be implicated
in the CityTime project fraud or (2) could have predicted a
material impact on the company.  Though the Complaint makes a
litany of allegations, as noted supra, it offers little to
support the claim that SAIC had a disclosure obligation.  In
reversing the initial findings, the Court now corrects this
oversight.

Furthermore, Plaintiffs are unable to establish scienter on
the remaining claims.  Scienter requires Plaintiffs to "state
with particularity facts giving rise to a strong inference that
each defendant acted with scienter-an intent to deceive or
reckless disregard for the truth." In re Hi-Crush Partners L.P.
Sec. Litig., 12 Civ. 8557, 2013 U.S. Dist. LEXIS 171110 (S.D.N.Y.
Dec. 2, 2013)(citing Tellabs, Inc. v. Makor Issues & Rights,
Ltd., 551 U.S. 308, 314 (2007)).  While the Court does not
require "great specificity," at the initial pleading phases, id.
(citing Ganino v. Citizens Utils. Corp., 228 F.3d 154, 169 (2d
Cir. 2000)), recklessness does require Plaintiffs to plead facts
showing "a state of mind approximating actual intent, and not
merely a heightened form of negligence." Novak v. Kasaks, 216
F.3d 300, 312 (2d Cir. 2000)(quotation and citation omitted).
Absent showing that Defendant possessed additional information,
Plaintiffs have, at best, shown a potential difference in

professional judgment, which is as "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." <u>Tellabs, Inc.</u>, 551 U.S. at 324.  Therefore, Plaintiffs also fail on this element of the claim.

The Court does not revisit this matter lightly.  Typically, a motion to reconsider should not displace a court's decision, nor should it serve "as a substitute for appealing from a final judgment." <u>Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.</u>, 170 F.R.D. 111, 113 (S.D.N.Y. 1997)(citation omitted).  However, the Court shares the Defendant's concern that the September 2013 Order might be understood to embrace the theory that SFAS No. 5 "require[s] companies to speculate about how government or internal investigations might come out," and could raise the "legitimate [public interest] concern [of]" corporations "resolving uncertainties in a way that invites assertion of claims or otherwise causes unnecessary harm to the client and stockholders." (Def.'s Mem. Law at 6)(internal citation omitted.) Leaving the September 2013 Order in place, moreover, would permit the prosecution of a case where the evidence is insufficient to support going forward.  It would unfairly compel the company, which has already been beset by the massive fraud related to the CityTime project, to defend a costly suit, and would cause further harm to Defendant SAIC and its stakeholders.  Defendant has made a "showing of exceptional circumstances," <u>Nemaizer v.</u>

12

Baker, 793 F.2d 58, 61 (2d Cir. 1986), whereby "factual matters
that were put before the Court on the underlying motion" were
misconstrued. Lichtenberg v. Besicorp Group Inc., 28 Fed. App'x
73, 75 (2d Cir. 2002)(citation omitted).  The Court intervenes,
therefore, "to prevent manifest injustice" from ensuing in the
instant case. United States v. Speed, 10 Civ. 3333, 2012 U.S.
Dist. LEXIS 66028, * 2 (S.D.N.Y. May 8, 2012)(citing Munafo v.
Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004)).  As such,
the Defendant's Motion to Reconsider is GRANTED and the remaining
claims are DISMISSED.

     D. Leave to Replead
     When a complaint has been dismissed, permission to amend it
"shall be freely given when justice so requires." Fed. R. Civ. P.
15(a).  Nevertheless, the Court may dismiss without leave to
replead when amendment would be "futile," or would not survive a
motion to dismiss. Oneida Indian Nation of New York v. City of
Sherrill, 337 F.3d 139, 168 (2d Cir. 2003)(internal citations
omitted), rev'd on other grounds sub nom. City of Sherrill v.
Oneida Indian Nation of New York, 544 U.S. 197 (2005).  Here, the
bulk of Plaintiffs' claims have been dismissed earlier with
prejudice, and Plaintiffs' Class Action Amended Complaint cannot,
on the facts set forth in the rounds of briefing (including the
Court's January 9, 2013 conference), make out any claim with the

requisite state of mind.  The alleged omissions were, at best, a result of differences in professional judgment within the range permitted by GAAP.  The Complaint cannot form the basis of the alleged violations under the Exchange Act, and an amendment thereto would be futile.

III. CONCLUSION

Accordingly, Defendant's Motion for Reconsideration is GRANTED.  On reconsideration, Plaintiffs' remaining claims are DISMISSED with prejudice and without leave to replead.  The Clerk of Court is directed to CLOSE the docket in this case.

SO ORDERED.

Dated: January 30, 2014
       New York, New York

Deborah A. Batts
United States District Judge

14