UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ――――――――――――――― x | | |
| In re SAIC, INC. SECURITIES LITIGATION | : | Master File No. 1:12-cv-01353-DAB |
| ――――――――――――――― | : | |
| | : | CLASS ACTION |
| This Document Relates To: | : | |
| | : | LEAD PLAINTIFFS' MEMORANDUM OF |
| ALL ACTIONS. | : | LAW IN SUPPORT OF UNOPPOSED |
| | : | MOTION FOR PRELIMINARY APPROVAL |
| ――――――――――――――― x | | OF SETTLEMENT |

# TABLE OF CONTENTS

**Page**

I.    THE LITIGATION ................................................................................................1

II.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..................5

    A.    The Standards for Reviewing a Proposed Settlement for Preliminary Approval ...........................................................................................5

    B.    An Analysis of the Factors Considered by the Second Circuit at Final Approval Supports Preliminary Approval of the Settlement..................................7

        1.    The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement............................................8

        2.    The Reaction of the Class to the Settlement ................................9

        3.    The Stage of the Proceedings....................................................10

        4.    The Risks of Establishing Liability and Damages .....................11

        5.    The Risks of Maintaining the Class Action Through Trial.......................13

        6.    The Ability of Defendant to Withstand a Greater Judgment ....................14

        7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation........................14

III.    THE PROPOSED CLASS SHOULD BE CERTIFIED TO EFFECTUATE THE SETTLEMENT........................................................................................16

    A.    The Standards for Class Certification ...................................................17

    B.    The Proposed Class Satisfies the Requirements of Rule 23 .................................18

        1.    Numerosity................................................................................18

        2.    Commonality.............................................................................18

        3.    Typicality .................................................................................19

        4.    Adequacy..................................................................................20

        5.    The Proposed Class Satisfies the Requirements of Rule 23(b) – Common Questions of Law Predominate and a Class Action Is Superior to Multiple Individual Actions ...................................21

- i -

**Page**

IV.    THE NOTICE PROGRAM IS ADEQUATE AND CONSTITUTES DUE AND SUFFICIENT NOTICE UNDER RULE 23, DUE PROCESS, AND THE PSLRA.........22

V.    PROPOSED SCHEDULE ................................................................................24

VI.    CONCLUSION.............................................................................................25

1328166_1

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987) ......................................................................14

*Allen v. Dairy Farmers of Am., Inc.*,
  No. 5:09-cv-230, 2011 WL 1706778
  (D. Vt. May 4, 2011).................................................................................5, 6

*In re Alloy, Inc. Sec. Litig.*,
  No. 03 Civ. 1597 (WHP), 2004 WL 2750089
  (S.D.N.Y. Dec. 2, 2004).............................................................................8, 11

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997).....................................................................................17

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  No. MDL 1500, 2006 WL 903236
  (S.D.N.Y. Apr. 6, 2006)...................................................................8, 11, 14, 15

*In re Arakis Energy Corp. Sec. Litig.*,
  No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246
  (E.D.N.Y. Apr. 30, 1999)...............................................................................21

*Baffa v. Donaldson*,
  222 F.3d 52 (2d Cir. 2000).............................................................................20

*In re Blech Sec. Litig.*,
  187 F.R.D. 97 (S.D.N.Y. 1999) ...........................................................17, 21, 22

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
  *Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)........................................................................18, 19

*City of Providence v. Aéropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 WL 1883494
  (S.D.N.Y. May 9, 2014),
  *aff'd sub nom. Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) .........................................................................6

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)..............................................................................18

*Cromer Fin. Ltd. v. Berger*,
   205 F.R.D. 113 (S.D.N.Y. 2001) .................................................................................22

*In re Currency Conversion Fee Antitrust Litig.*,
   No. 01 MDL 1409, 2006 WL 3247396
   (S.D.N.Y. Nov. 8, 2006) ...........................................................................................5

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)........................................................................................14

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)...............................................................................7, 8, 11

*In re Deutsche Telekom AG Sec. Litig.*,
   229 F. Supp. 2d 277 (S.D.N.Y. 2002).......................................................................19

*In re Enron Corp. Sec.*,
   228 F.R.D. 541 (S.D. Tex. 2005)...............................................................................15

*Epstein v. MCA, Inc.*,
   50 F.3d 644 (9th Cir. 1995),
   *rev'd on other grounds sub nom.*
   *Matsushita Elec. Indus. Co. v. Epstein*,
   516 U.S. 367 (1996)...................................................................................................17

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................7, 11, 15

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-Civ-8557 (CM), 2014 WL 7323417
   (S.D.N.Y. Dec. 19, 2014) ..........................................................................................11

*Hicks v. Morgan Stanley*,
   No. 01 Civ. 10071 (RJH), 2005 WL 2757792
   (S.D.N.Y. Oct. 24, 2005) .............................................................................................8

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ...........................................................................6, 14

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................................19

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ...................................................................................9

*In re Initial Pub. Offering Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)..........................................................................................17

1328166_1

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ...........................................................................18

*Maywalt v. Parker & Parsley Petroleum Co.*,
   147 F.R.D. 51 (S.D.N.Y. 1993) ............................................................................18

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ..............................................................................6

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ..........................................................................5, 6

*In re Nassau Cty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006).................................................................................21

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)................................................................................15

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ............................................................................18

*In re Omnicom Grp., Inc. Sec. Litig.*,
   No. 02 Civ. 4483 (RCC), 2007 U.S. Dist. LEXIS 31963
   (S.D.N.Y. Apr. 30, 2007)......................................................................................21

*In re Pfizer Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ............................................................................18

*In re Platinum & Palladium Commodities Litig.*,
   No. 10cv3617, 2014 WL 3500655
   (S.D.N.Y. July 15, 2014) .....................................................................................5, 7

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ....................................................................16, 19

*In re Sadia S.A. Sec. Litig.*,
   No. 08 Civ 9528 (SAS), 2011 WL 6825235
   (S.D.N.Y. Dec. 28, 2011) .......................................................................................6

*In re Sadia*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ..........................................................................19

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................................................................9

Page

*Teachers' Ret. Sys. v. ACLN Ltd.*,
  No. 01 Civ. 11814 (LAP), 2004 U.S. Dist. LEXIS 25927
  (S.D.N.Y. Dec. 27, 2004) .................................................................................19

*In re Twinlab Corp. Sec. Litig.*,
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) ...............................................................19

*In re Visa Check/MasterMoney Antitrust Litig.*,
  192 F.R.D. 68 (E.D.N.Y. 2000),
  *aff'd*, 280 F.3d 124 (2d Cir. 2001) ..................................................................22

*In re Vivendi Universal, S.A. Sec. Litig.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005).................................................................................5

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)..............................................................................14

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515 (WHP), 2008 WL 5110904
  (S.D.N.Y. Nov. 20, 2008) ...................................................................................7

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)................................................................................16

**Statutes**

15 U.S.C.
  §78j(b)..................................................................................................................2
  §78t(a)..................................................................................................................2

Federal Rules of Civil Procedure
  Rule 23 .................................................................................................16, 17, 18
  Rule 23(a)...................................................................................................17, 22
  Rule 23(a)(1)......................................................................................................18
  Rule 23(a)(2)...............................................................................................18, 19
  Rule 23(a)(3)......................................................................................................19
  Rule 23(a)(4)......................................................................................................20
  Rule 23(b)...................................................................................................17, 21, 22
  Rule 23(b)(3).................................................................................................17, 21
  Rule 23(c)(1)(C).................................................................................................14
  Rule 23(c)(2)......................................................................................................23
  Rule 23(e)...........................................................................................................22
  Rule 23(e)(1)......................................................................................................22

1328166_1

**Page**

**Other Authorities**

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
   *Securities Class Action Settlements: 2016 Review and Analysis*, Figure 6
   (Cornerstone Research 2017)...................................................................................................15

Lead Plaintiffs Indiana Public Retirement System, Indiana State Teachers' Retirement Fund and Indiana Public Employees' Retirement Fund (collectively, "Lead Plaintiffs") submit this memorandum of law in support of their unopposed motion for preliminary approval of the settlement reached in this Litigation (the "Settlement"). The Settlement provides a recovery of $6,500,000 in cash to resolve this securities class action against defendant SAIC, Inc. ("SAIC") (n/k/a Leidos, Inc.) ("Defendant," "SAIC," or the "Company"). The terms of the Settlement are set forth in the Stipulation of Settlement dated December 12, 2017 (the "Stipulation"), filed concurrently herewith.[1]

By this motion, Lead Plaintiffs seek entry of an order: (1) granting preliminary approval of the Settlement; (2) certifying the Class solely for settlement purposes; (3) approving the form and manner of giving notice of the Settlement to the Class; and (4) setting a hearing date for final approval thereof (the "Settlement Hearing") and a schedule for various deadlines relevant thereto. As shown below, the Settlement is a highly favorable result for the Class under the circumstances – representing approximately 45% of Lead Plaintiffs' most reasonable estimate of potentially recoverable damages – and, accordingly, is fair, reasonable, and adequate under the governing standards in this Circuit, warranting preliminary and ultimately final approval of this Court.

## I.      THE LITIGATION

The initial complaint in this action was filed on February 22, 2012, and on June 14, 2012, the Court appointed Lead Plaintiffs and Robbins Geller Rudman & Dowd LLP as lead counsel ("Robbins Geller" or "Lead Counsel"). On August 30, 2012, Lead Plaintiffs filed their Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), which

---

[1]     Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation.

alleged claims on behalf of a putative class of purchasers of SAIC common stock between April 11, 2007 and September 1, 2011, inclusive.

Specifically, the Complaint alleged that SAIC and the Former Defendants (Kenneth C. Dahlberg, Walt Havenstein, Mark W. Sopp, Deborah A. Alderson, and Gerard Denault) violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 by, *inter alia,* issuing materially false and misleading statements and failing to disclose loss contingencies and uncertainties associated with an overbilling scheme, perpetrated by two former employees and others, that defrauded New York City out of hundreds of millions of dollars in connection with the CityTime project over a multi-year period.  The Complaint further alleged that as a result of these material misrepresentations and omissions, SAIC common stock traded at artificially inflated prices.

On November 9, 2012, SAIC and the Former Defendants filed Motions to Dismiss the Complaint.  Lead Plaintiffs filed their opposition to the motions on February 8, 2013, and SAIC and the Former Defendants filed their replies on March 25, 2013.  On September 30, 2013, the Court denied the motions to dismiss with respect to two claims alleged against SAIC based on the alleged CityTime-related omissions, and granted them with respect to the Former Defendants.[2]

On October 15, 2013, SAIC moved for partial reconsideration of the Court's decision on the motions to dismiss, which motion was opposed by Lead Plaintiffs on October 25, 2013.  SAIC filed its reply on November 4, 2013, and on January 30, 2014, the Court granted the motion and dismissed the Litigation.[3]

---

[2]   On September 9, 2013, Lead Plaintiffs requested the Court to schedule a pre-motion conference in connection with an application to partially life the automatic stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") during the pendency of the motions to dismiss.  On September 16, 2013, SAIC opposed the request.  On September 30, 2013, the Court denied the request as moot when it rendered its decision on the motions to dismiss.

[3]   SAIC filed its answer to the Complaint on December 2, 2013.

On March 4, 2014, Lead Plaintiffs filed a motion to vacate the judgment to reinstate the dismissed claims against SAIC and/or for leave to further amend the Complaint, together with a [Proposed] Second Amended Class Action Complaint for Violations of the Federal Securities Laws. SAIC filed an opposition to the motion on April 2, 2014, and Lead Plaintiffs filed their reply on April 18, 2014.  On September 30, 2014, the Court denied Lead Plaintiffs' motion to vacate or amend, and on October 30, 2014, Lead Plaintiffs filed a Notice of Appeal to the Second Circuit Court of Appeals.

On February 11, 2015, Lead Plaintiffs filed their opening brief in the Second Circuit Court of Appeals, and on May 13, 2015, SAIC and the Former Defendants filed their answering brief.  On June 22, 2015, Lead Plaintiffs filed their reply briefs, and oral argument on the appeal was held on October 6, 2015.  On March 29, 2016, the Second Circuit reinstated the two claims alleged against SAIC based on the alleged CityTime-related omissions and affirmed the dismissal of others.  The Second Circuit Court of Appeals also confirmed that the Class Period begins on March 25, 2011.

On April 12, 2016, SAIC filed in the Second Circuit Court of Appeals a Petition for Panel Rehearing and Rehearing en Banc.  The Second Circuit denied the petition on August 2, 2016.

On September 6, 2016, SAIC requested a pre-motion conference in contemplation of a motion establishing that the Class Period must end on June 2, 2011 instead of September 1, 2011. On September 9, 2016, Lead Plaintiffs opposed the request, and the parties submitted additional letters to the Court thereafter.  On September 23, 2016, the Court granted SAIC's request to end the Class Period on June 2, 2011.  On October 7, 2016, Lead Plaintiffs filed a motion for reconsideration or certification of an appeal of the September 23, 2016 decision, and SAIC filed its opposition to the motion on October 24, 2016.  Lead Plaintiffs filed their reply to the motion on November 3, 2016, and on February 2, 2017, the Court denied the motion.

- 3 -

On October 31, 2016, SAIC filed its petition for a writ of certiorari with the U.S. Supreme Court, and Lead Plaintiffs filed their Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "SAC"), alleging a Class Period covering March 25, 2011 to June 2, 2011, inclusive.  SAIC filed its answer to the SAC on November 30, 2016.  Lead Plaintiffs opposed the certiorari petition on February 8, 2017, and SAIC filed its reply on February 21, 2017.

On March 27, 2017, the Supreme Court granted SAIC's petition for certiorari, and on April 5, 2017, after letter briefing from the parties, the Court stayed all proceedings pending resolution of the appeal.  SAIC filed its opening brief in the Supreme Court on June 21, 2017.  Lead Plaintiffs filed their answering brief on August 31, 2017.

In addition, during the course of this Litigation, Lead Plaintiffs continued their investigative efforts and attempted to uncover additional facts in support of their claims.  These efforts entailed monitoring legal and other proceedings concerning the misconduct associated with the CityTime project, including the review of over 5,000 pages of trial transcripts from the criminal proceedings; submitting and pursuing requests to federal and state agencies under the Freedom of Information Act ("FOIA") and the New York Freedom of Information Law ("FOIL"), respectively; and successfully litigating an Article 78 proceeding in New York State Court against several New York City agencies with knowledge of, or involvement in, the CityTime project.  These extensive pre-discovery efforts resulted in Lead Plaintiffs' receipt and analysis of thousands of pages of materials regarding the CityTime project and SAIC's oversight of it, much of which Lead Counsel incorporated into the SAC.

In an effort to settle the Litigation during the pendency of the Supreme Court appeal, Lead Plaintiffs and SAIC engaged the services of Bruce A. Friedman, Esq. of JAMS, an experienced mediator.  They prepared and exchanged mediation statements and engaged in a full-day in-person

- 4 -

mediation session with Mr. Friedman on September 14, 2017.  These efforts culminated with the parties agreeing to settle the Litigation for Six Million Five Hundred Thousand Dollars ($6,500,000), subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court.

## II.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.   The Standards for Reviewing a Proposed Settlement for Preliminary Approval

Once a settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval.  In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006);[4] *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled. . . .  In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.").  "In determining whether to grant preliminary approval, the court starts with the proposition that 'there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.'"  *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011).

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary approval is generally granted.  *See NASDAQ*, 176 F.R.D. at 102; *In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014)

---

[4]   Citations and footnotes are omitted throughout unless otherwise noted.

("Preliminary approval, at issue here, 'is at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'  A district court should preliminarily approve a proposed settlement which 'appears to be the product of serious, informed non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval.'").  "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ*, 176 F.R.D. at 102.  "Preliminary approval is merely the first step in a multi-step process in which the . . . Settlement will be scrutinized by both the court and class members." *Allen*, 2011 WL 1706778, at *2.  "It deprives no party or non-party of any procedural or substantive rights, and provides a mechanism through which class members who object to the . . . Settlement can voice those objections." *Id.*

A strong initial presumption of fairness attaches to a proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations with an experienced mediator, and courts should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *3 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012); *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528 (SAS), 2011 WL 6825235, at *1 (S.D.N.Y. Dec. 28, 2011).

1328166_1

**B.     An Analysis of the Factors Considered by the Second Circuit at Final Approval Supports Preliminary Approval of the Settlement**

As discussed herein, the proposed Settlement represents an excellent result for the Class under the circumstances.  It provides a recovery in a case where Lead Plaintiffs faced significant delays to proceeding with the action, and ultimately proving liability and damages at trial.  As a result, the Settlement is well within the range of what is fair, reasonable, and adequate.

Lead Plaintiffs also submit that an analysis of the *Grinnell* factors (*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)), set forth below, which apply to a court's determination of final approval of a settlement, also supports preliminary approval of the Settlement.  *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, 'the Court need only find that the proposed settlement fits "within the range of possible approval"' to proceed."); *Platinum*, 2014 WL 3500655, at *12 ("At preliminary approval, it is not necessary to exhaustively consider the factors applicable to final approval.").

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  "[N]ot every factor must weigh in favor of settlement, 'rather the court should consider the totality of the[] factors in light of the particular circumstances.'"  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).  Although final approval is not

- 7 -

sought at this time, an analysis of the *Grinnell* factors supports preliminary approval of the Settlement.

**1.     The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement**

Courts have consistently recognized that the complexity, expense, and likely duration of the litigation are critical factors in evaluating the reasonableness of a settlement, especially where the settlement being evaluated is a securities class action. *See, e.g.*, *Hicks v. Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *5-*6 (S.D.N.Y. Oct. 24, 2005); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (approving settlement, noting action involved complex securities fraud issues "that were likely to be litigated aggressively, at substantial expense to all parties"); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) (due to their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").

This case is no exception.  Lead Plaintiffs advanced numerous complex factual and novel legal issues under the Securities Exchange Act of 1934, many of which would require expert discovery and testimony.  Indeed, a central issue in this case is whether Item 303 of U.S. Securities and Exchange Commission ("SEC") Regulation S-K gives rise to a disclosure obligation that is sufficient to support a securities fraud claim, such that a failure to disclose the information required by Item 303 constitutes an actionable omission under the federal securities laws.  The parties and various interested third-parties strenuously disagreed on the answer to this question, with SAIC contending that a circuit split requires resolution by the Supreme Court.  Furthermore, even if Lead Plaintiffs prevailed before the Supreme Court, expert testimony could be required to establish the contours of Item 303's disclosure obligation.

- 8 -

Moreover, this case was initially filed in 2012, and the parties are still effectively litigating the motion to dismiss, as SAIC's petition for certiorari was accepted by the Supreme Court and briefing of the appeal was under-way when this Settlement was reached.  Assuming Lead Plaintiffs ultimately prevailed at the Supreme Court, extensive fact and expert discovery would have to be taken over a compressed 16-month period.  As Lead Plaintiffs' allegations concern events that occurred over a decade ago, locating witnesses and documents would likely be difficult and expensive – particularly because the criminal proceedings are long-concluded, and certain witnesses who perpetrated the CityTime fraud are incarcerated.

"'[A] vast amount of additional factual and expert discovery remains to prepare for trials, and motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable.'" *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 117 (S.D.N.Y. 2009).  If, after the completion of discovery, Lead Plaintiffs defeated Defendant's likely motion for summary judgment, the trial of this action would be complicated for jurors, and would be expensive for the Class, given the amount of fact and expert discovery that would be needed to be taken if the action continued.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").  Accordingly, analysis of this factor supports approval of the Settlement.

### 2.     The Reaction of the Class to the Settlement

Lead Plaintiffs have participated throughout the prosecution of the Litigation and were actively involved in the decision to enter into the Settlement.  Notice regarding the Settlement has not yet been mailed or otherwise distributed to Class Members.  In the event any objections are

received after notice is disseminated, they will be addressed by Lead Counsel in connection with Lead Plaintiffs' motion for final approval of the Settlement.

### 3.    The Stage of the Proceedings

The volume and substance of Lead Plaintiffs' and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are unquestionably adequate to support the Settlement.  This knowledge is based, first and foremost, on Lead Counsel's extensive investigation during the prosecution of this Litigation, including, *inter alia*: (i) review of press releases, public statements, SEC filings, regulatory filings and reports, and securities analysts' reports and advisories about SAIC, the Former Defendants and the CityTime project; (ii) review of voluminous trial transcripts and testimony taken in the CityTime criminal trial, as well as other legal proceedings, including Denault's legal fee advancement lawsuit in the Delaware Court of Chancery; (iii) research of the applicable law with respect to the claims asserted in the Litigation and the potential defenses thereto; (iv) filing several rounds of detailed complaints, including the SAC, which weighs in at almost 180 pages; (v) briefing numerous motions to dismiss, motions for reconsideration and appeals; (vi) requesting and receiving documents under FOIL and FOIA, as well as pursuing the pre-discovery production of documents from several state agencies in litigation; and (vii) numerous consultations with Lead Plaintiffs' non-testifying damages consultant.  Moreover, prior to mediation with Mr. Friedman, the Settling Parties exchanged detailed mediation statements, which further highlighted the factual and legal issues in dispute.  During the mediation, the Settling Parties' respective positions were fully vetted.

The accumulation of this information permitted Lead Plaintiffs and Lead Counsel to be well-informed about the strengths and weaknesses of their case despite the mandated PSLRA discovery stay pending resolution of the motions to dismiss and to engage in effective settlement discussions.

- 10 -

*See Global Crossing*, 225 F.R.D. at 458 ("the question is whether the parties had adequate information about their claims").  "To satisfy this factor, parties need not have even engaged in formal or extensive discovery."  *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (nothing that discovery cannot commence in cases brought under the PSLRA until the motion to dismiss is denied).  This factor also supports approval of the Settlement.

### 4.      The Risks of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.  *See Grinnell*, 495 F.2d at 463.  Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet.  *See AOL Time Warner*, 2006 WL 903236, at *11 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 WL 2750089, at *2 (finding that issues present in securities action presented significant hurdles to proving liability).

While Lead Plaintiffs believe that their remaining claims would be borne out by the evidence, they also recognize that they face hurdles to proving liability.  SAIC has articulated various defenses to Lead Plaintiffs' allegations that may have been accepted by the Supreme Court or this Court at the summary judgment stage, or by the jury at trial.

SAIC has consistently maintained that there is no private right of action to assert §10(b) claims to enforce the SEC's disclosure requirements under Item 303.  This novel issue was before the Supreme Court at the time this Settlement was reached; and an adverse determination could have impacted the propriety of the other claim that the Second Circuit upheld, which involved an alleged violation of U.S. Generally Accepted Accounting Principles ("GAAP").

- 11 -

1328166_1

Moreover, regardless of the interplay and factual overlap between the Item 303 and GAAP claims, SAIC has maintained that it properly exercised its judgment in determining that GAAP did not require the disclosure of a loss contingency earlier than the Company disclosed it.  Indeed, as it stands, the Class Period presently roughly covers only nine weeks; thus, SAIC argued, and would continue to argue, that the facts do not support a claim that it recklessly or intentionally withheld for such a short period of time material information regarding its exposure to a loss associated with the CityTime project.  In fact, according to SAIC, it told the truth the entire time.

SAIC further argued that even if the Supreme Court ruled in Lead Plaintiffs' favor on the Item 303 issue, they would nevertheless be unable to prove that SAIC acted with scienter in failing to disclose potential risks and liabilities associated with the CityTime project.  More specifically, SAIC contends that Lead Plaintiffs could not establish that any SAIC executive responsible for preparing the March 2011 Form 10-K intended to defraud investors, or that at the time the March 2011 Form 10-K was issued any senior executives were aware that SAIC employees were involved in the CityTime scheme at all.[5]  Additionally, as SAIC repeatedly emphasized throughout this case, Denault was convicted of committing honest services fraud against SAIC, a charge defined in the jury instructions as:  "a plan to deprive another of honest services by accepting bribes and kickbacks without the employer's or principal's knowledge and consent."  *U.S. v. Mazer*, No. 11-cr-121 (S.D.N.Y.), Jury Instructions, Dkt. No. 303 at 5343:8-10.

Defendant also raised challenges with respect to loss causation, arguing, for example, that SAIC's August 31, 2011 earnings call with analysts did not serve as a "corrective disclosure" of previously unknown information which caused SAIC's stock price to decline the following day,

---

[5]    In fact, the jury convicted Denault of committing honest services fraud against SAIC, and the other former SAIC employee charged with fraud pled guilty to defrauding SAIC and depriving SAIC of honest services.

because by that date, the public was extensively informed of Denault's and Bell's suspected fraud and the possibility of SAIC's exposure to loss.  *See* Dkt. No. 72 at 24-25.  The Company further contends that SAIC stock declined on September 1, 2011 because the Company disclosed that "overall results for the quarter were disappointing" and that quarterly revenues were down 6% from the previous year.  *Id.* at 25.

In fact, SAIC contends that June 2, 2011 marks the complete disclosure of the truth regarding the alleged fraud, such that Lead Plaintiffs could not seek (much less recover) damages for losses associated with news disclosed on any date thereafter.  And yet the stock price decline associated with the June 2, 2011 disclosure was minimal, amounting to less than 50 cents – possibly because SAIC also disclosed positive news on that date.

As a result, Lead Plaintiffs faced substantial risks in establishing loss causation and, therefore, damages.  As with contested liability issues, issues relating to loss causation and damages would also have likely come down to an inherently unpredictable and hotly disputed "battle of the experts."  Accordingly, in the absence of a settlement, there is a very real risk that the Class would recover an amount significantly less than the total Settlement Amount – or even nothing at all.  Thus, the certain and immediate payment of $6,500,000, when viewed in the context of the risks and the uncertainties involved in this Litigation, weighs in favor of approval of the Settlement.

### 5.    The Risks of Maintaining the Class Action Through Trial

While the Class has not yet been certified in this Litigation, Lead Plaintiffs and their counsel believe that if such motion was filed it would be granted.  However, if litigation at the motion-to-dismiss stage is any indication, a class certification motion would likely face similar efforts, further delaying the resolution of the case.  In fact, the Court ordered summary judgment proceedings to conclude before Lead Plaintiffs could move for class certification, raising the possibility that SAIC

might secure the dismissal of this case before Lead Plaintiffs even had the opportunity to request the Court to certify a class.

Moreover, even if a motion for class certification was granted pursuant to Fed. R. Civ. P. 23(c)(1)(C): "An order that grants or denies class certification may be altered or amended before final judgment."  Thus, if the Class was certified, there would still remain a risk that certification would not be maintained through trial, or that the Class Period would be further shortened.  Thus, this factor weighs in favor of the Settlement.  *See AOL Time Warner*, 2006 WL 903236 (finding the risk of plaintiffs not succeeding in certifying class supported approval of settlement).

**6.      The Ability of Defendant to Withstand a Greater Judgment**

A court may consider a defendant's ability to withstand a judgment greater than the settlement amount, although it is not generally one of the determining factors.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (affirming district court's finding that defendant's ability to pay more was irrelevant to assessment of settlement).  Indeed, "'a defendant is not required to "empty its coffers" before a settlement can be found adequate.'"  *IMAX*, 283 F.R.D. at 191.  Nevertheless, the ability of a defendant to withstand a greater judgment is not an impediment to settlement when the other factors favor the settlement.  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

**7.      The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – "a range which recognizes the uncertainties of

- 14 -

law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). Assuming that this Litigation were to proceed, as discussed above, delays and hurdles faced by Lead Plaintiffs would be substantial. While Lead Plaintiffs believe that the remaining claims asserted against the Defendant is meritorious and that substantial evidence to support the allegations has been, and would continue to be, adduced, it recognizes that this Litigation presented a number of risks to establishing both liability and damages.

The Settlement represents a highly favorable result under the circumstances considering a possible recovery was zero. As the court stated when approving one of the settlements in the *Enron ERISA* litigation: "The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand." *In re Enron Corp. Sec.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005).

Here, Lead Counsel obtained a settlement that represents approximately 45% of Lead Plaintiffs' most reasonable estimate of maximum provable damages, given that the Class Period covers only nine weeks and involves a single corrective disclosure. This percentage far exceeds the 2.5% median recovery in similar securities class actions settled in 2016. *See* Laarni T. Bulan, Ellen

- 15 -

M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2016 Review and Analysis* at 7, Figure 6 (Cornerstone Research 2017).[6]

In light of these litigation risks and other above-referenced potential obstacles to recovery at trial, and when the Settlement Amount is viewed in the context of the total possible recoverable damages, and the risk of an adverse decision by the Supreme Court, the certain recovery of $6.5 million represents a very good result for the Class.[7]   Lead Plaintiffs respectfully submit that the Settlement is non-collusive, has no obvious defects, and is within the range of reasonableness. Accordingly, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

### III.   THE PROPOSED CLASS SHOULD BE CERTIFIED TO EFFECTUATE THE SETTLEMENT

In deciding whether to preliminarily approve a proposed settlement, the court must determine whether the class may be certified for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure.  Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995).  The Second Circuit, in particular, has recognized that "'settlement classes have proved to be quite useful in resolving major class action disputes.'"  *Weinberger v. Kendrick*, 698  F.2d 61, 72 (2d Cir. 1982).  Moreover, "[c]lass action treatment . . . is particularly appropriate when plaintiffs seek redress for violations of the securities laws," and "[a]ccordingly, in [securities cases], when a court is

---

[6]   Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2016-Review-and-Analysis.

[7]   Lead Counsel is not seeking an award of attorneys' fees, but only an award of litigation expenses.  Thus, virtually all of the Settlement Fund will be distributed to Class Members who submit timely and valid claims.

in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999); *see also Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996) (holding that securities actions alleging misstatements or omissions fit the requirements of Rule 23 "like a glove").

### A.   The Standards for Class Certification

"[A] district judge may certify a class only after making a determination that each of the Rule 23 requirements has been met . . . ." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Rule 23(a) sets forth four prerequisites to class certification, which are commonly referred to as:  (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.  In addition, the class must meet one of the three requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23. While a settlement class, like other certified classes, must satisfy Rules 23(a) and (b), the manageability concerns of Rule 23(b) are not at issue in certification of a settlement class. *Amchem Prods. v. Windsor*, 521 U.S. 591, 593 (1997).  Here, the Settling Parties are asking the Court to certify the following Class for settlement purposes only:

> all Persons who purchased or otherwise acquired SAIC common stock between March 25, 2011 and June 2, 2011, inclusive.  Excluded from the Class are:  the Former Defendants, the officers and directors of Leidos, formerly SAIC, during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant or the Former Defendants have or had a controlling interest.  Also excluded from the Class is any Class Member that validly and timely requests exclusion in accordance with the requirements set by the Court.

As set forth below, Lead Plaintiffs respectfully submit that the Class satisfies each of the requirements of Rules 23(a) and 23(b)(3), and accordingly, the Court should certify the proposed Class for settlement purposes.

- 17 -

1328166_1

**B.      The Proposed Class Satisfies the Requirements of Rule 23**

**1.      Numerosity**

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 55 (S.D.N.Y. 1993).  Here, SAIC common stock actively traded throughout the Class Period on the New York Stock Exchange, and there were millions of shares outstanding.  *See, e.g.*, *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009) ("In securities class actions 'relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'").  While the exact number of Class Members is unknown, purchasers of SAIC common stock are believed to number in the hundreds, or thousands, making joinder of all Class Members impractical.  *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008) (class of shareholders numbering in hundreds or thousands satisfied the numerosity requirement).  Thus, the numerosity requirement of Rule 23(a)(1) is satisfied.

**2.      Commonality**

Rule 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).  Securities cases like this one easily meet the commonality requirement, where "'putative class members have been injured by similar misrepresentations and omissions.'"  *In re Pfizer Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012).

- 18 -

Here, all Class Members purchased SAIC common stock during the Class Period based upon the misrepresentations and omissions of material fact alleged in the SAC. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 85 (S.D.N.Y. 2007); *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 281 (S.D.N.Y. 2002).   Accordingly, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3.        Typicality

The typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members.   *See Prudential*, 163 F.R.D. at 208 (finding typicality where plaintiffs alleged that defendants committed the same acts, in the same manner against all class members).   Typicality is established where "'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Cent. States*, 504 F.3d at 245; *In re Sadia*, 269 F.R.D. 298, 304-05 (S.D.N.Y. 2010).

Lead Plaintiffs' claims are typical of the claims of other Class Members because their losses derive from the same alleged course of Defendant's conduct.   Where, as here, "the lead plaintiff alleges a common pattern of wrongdoing and will present the same evidence, based on the same legal theories, to support its claim as other members of the proposed class, courts have held the typicality requirement to be satisfied." *Teachers' Ret. Sys. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 U.S. Dist. LEXIS 25927, at *12 (S.D.N.Y. Dec. 27, 2004); *see also In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002); *Deutsche Telekom*, 229 F. Supp. 2d at 281. Therefore, Lead Plaintiffs' claims are typical of the claims of the Class, and thus, Rule 23(a)(3) is satisfied.

### 4.      Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To satisfy this requirement, the proposed class representative must be free of interests that are antagonistic to the other members of the class, and counsel representing the class must be qualified, experienced and capable of conducting the litigation.  *See Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000).  "[M]any courts have observed [that] the issues of typicality and adequacy tend to merge because they 'serve as guideposts for determining whether . . . the named plaintiff's claims and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'"  *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007).

As described above, Lead Plaintiffs' claims are typical of and coextensive with those of the other Members of the Class.  Lead Plaintiffs have demonstrated their ability and willingness to pursue the Litigation.  They have actively prosecuted the Litigation through, among other things, its investigation of the claims and defenses that were and/or could have been asserted, and their retention of attorneys with extensive experience in the area of securities class action litigation.  Robbins Geller has substantial experience in securities class action litigation and has successfully prosecuted many securities and other complex class actions in courts throughout the United States.  *See* www.rgrdlaw.com.  Thus, Lead Plaintiffs are adequate representatives of the Class, and their counsel are qualified, experienced and capable of prosecuting this Litigation, in satisfaction of Rule 23(a)(4).

5.     **The Proposed Class Satisfies the Requirements of Rule 23(b) –
Common Questions of Law Predominate and a Class Action Is
Superior to Multiple Individual Actions**

Finally, a class must also satisfy one of the three subparts of Rule 23(b).  To ensure that the class action is more efficient than individual actions, Rule 23(b) requires that common issues predominate over any issues that may be particular to the class representatives.  Generally, common questions will predominate if the common issue constitutes a significant part of each of the class members' individual cases.  *See Blech*, 187 F.R.D. at 107; *see also In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 Civ. 4483 (RCC), 2007 U.S. Dist. LEXIS 31963, at *22 (S.D.N.Y. Apr. 30, 2007) (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, at *37 (E.D.N.Y. Apr. 30, 1999) ("In securities fraud class actions . . . common issues of law and fact will generally predominate over individual issues.").

The Litigation involves the type of "'common nucleus of operative facts and issues' with which the predominance inquiry is concerned."  *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006).  As noted above, Lead Plaintiffs have alleged that Defendant made materially false and misleading statements and omissions during the Class Period regarding the CityTime project.  If Lead Plaintiffs and each of the other Class Members were to bring individual actions, they would each be required to prove the same wrongdoing by Defendant in order to establish liability.

As further required by Rule 23(b)(3), "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Where a class action is a superior method, the interests of class members in individually controlling the prosecution of separate claims will be generally outweighed by the efficiency of the class

- 21 -

mechanism, and each individual claim will be too small to make most individual suits practical. *In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 88 (E.D.N.Y. 2000) (stating "[w]ithout class certification," it is highly likely that many plaintiffs "will lose any practical means of obtaining damages for [a] defendant['s] allegedly illegal conduct"), *aff'd*, 280 F.3d 124 (2d Cir. 2001). Securities class actions generally meet the superiority requirement. *Blech*, 187 F.R.D. 97.

This is a fairly typical securities class action, in that there are hundreds, if not thousands, of Class Members. Because many Members of the Class are likely to possess a claim that is too small to warrant filing a separate action, the class action device is the only viable method by which the overwhelming majority of persons injured by Defendant's wrongful conduct may obtain a remedy. Moreover, separate actions would "risk disparate results among those seeking redress," "encourage a race to judgment given the limited funds available to fund recovery here," "exponentially increase the costs of litigation for all," and "be a particularly inefficient use of judicial resources." *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001).

In light of the foregoing, all of the requirements of Rules 23(a) and 23(b) are satisfied. Accordingly, Lead Plaintiffs respectfully request that the Court certify the Class for settlement purposes and appoint them as the class representatives.

## IV.   THE NOTICE PROGRAM IS ADEQUATE AND CONSTITUTES DUE AND SUFFICIENT NOTICE UNDER RULE 23, DUE PROCESS, AND THE PSLRA

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions. The Rule provides that a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. The Rule provides, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

1328166_1

Here, the parties have negotiated the Notice to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort. The parties further propose to supplement the mailed Notice with a summary notice (the "Summary Notice"), to be published once in the *The Wall Street Journal* and once over the *Business Wire*. The Notice and Summary Notice are attached to the Stipulation and the Preliminary Approval Order as Exhibits A-1 and A-3, respectively.

As required by Federal Rule of Civil Procedure 23(c)(2) and the PSLRA, the Notice describes the nature of the Litigation; sets forth the definition of the Class; states the Class' claims; and discloses the right of Class Members to exclude themselves from the Class, as well as the deadline and procedure for doing so and warns of the binding effect of the settlement approval proceedings on Class Members who do not exclude themselves. The Notice also describes the Settlement and the Settlement Fund, both in the aggregate and on an average basis; explains the proposed Plan of Allocation; states the parties' disagreement over damages and other issues; sets out the amount of expenses that Lead Counsel intends to seek in connection with final settlement approval, including the amount of the requested expenses determined on an average basis; provides contact information for Lead Counsel, including a toll-free telephone number; and summarizes the reasons the parties are proposing the Settlement. The Notice also discloses the date, time, and place of the formal fairness hearing, and the procedures for objecting to the Settlement, the Plan of Allocation, and/or counsel's request for expenses, and appearing at the hearing. The contents of the Notice therefore satisfy all applicable requirements. Moreover, the format is the same or similar to formats that have been approved by many courts in this jurisdiction.

Lastly, as part of the preliminary approval of the Settlement, Lead Plaintiffs also respectfully request the appointment of Gilardi & Co. LLC ("Gilardi") as Claims Administrator. As Claims

- 23 -

1328166_1

Administrator, Gilardi will be responsible for, among other things, mailing the Notices to the Class, publishing the Summary Notice, and reviewing and processing claims from Class Members.  Gilardi has extensive experience in settlement administration and will more than adequately fulfill its duties in this case.  *See* www.gilardi.com.

## V.    PROPOSED SCHEDULE

If the Court grants preliminary approval of the Settlement, Lead Plaintiffs respectfully submit the following procedural schedule for the Court's review:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Notice and Proof of Claim and Release form to Class Members | 21 calendar days after entry of the Preliminary Approval Order ("Notice Date") |
| Deadline for publishing the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for submitting Proof of Claim and Release forms | 120 calendar days after the Notice Date |
| Deadline for submitting exclusion requests or objections | 60 calendar days after the Notice Date |
| Filing of memoranda in support of approval of the Settlement and Plan of Allocation, and in support of application for expenses | 28 calendar days before the Settlement Hearing |
| Filing of reply memoranda | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | At least 100 calendar days following entry of the Preliminary Approval Order, at the Court's convenience |

- 24 -

## VI.    CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice, which was agreed to by the Settling Parties.

DATED:  December 13, 2017                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
JOSEPH RUSSELLO


s/ Samuel H. Rudman
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
jrussello@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I, Samuel H. Rudman, hereby certify that on December 13, 2017, I authorized a true and correct copy of LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

s/ Samuel H. Rudman

SAMUEL H. RUDMAN